CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

EVAN M. MATEER (CABN 326848)
Assistant United States Attorney

    1301 Clay Street, Suite 340S
    Oakland, California 94612
    Telephone: (510) 637-3680
    FAX: (510) 637-3724
    Evan.mateer@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:25-MJ-70244-MAG |
| Plaintiff, | **MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN** |
| v. | |
| ANTHONY PEARSON, | |
| Defendant. | |

**INTRODUCTION**

On May 17, 2025, Defendant Anthony Pearson led California Highway Patrol (CHP) officers on a high-speed chase, weaving his stolen vehicle through busy traffic at speeds approaching 100 miles per hour. When Pearson was finally apprehended, he was found in possession of a loaded shotgun. This conduct is just the most recent entry in Pearson's life of crime, totaling 18 convictions, including other firearms offenses and a reckless flight that resulted in serious injury or death, and numerous violations of court supervision. Pearson is a risk of flight and a serious danger to the community, and should be detained pending trial.

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN     1
4:25-MJ-70244-MAG

# BACKGROUND

**A. In May 2025, Pearson engaged in a high-speed flight from CHP before being arrested in possession of a loaded shotgun**

On or about May 17, 2025, at approximately 4:15 if the afternoon, CHP patrol vehicles were alerted to a stolen red Honda Accord by a CHP aviation unit.  When the marked CHP patrol vehicle got directly behind the Accord, it immediately crossed solid double yellow lines while passing a vehicle stopped at a red light, and then made a right turn onto International Boulevard. The marked CHP patrol vehicle pursued, but the Accord failed to yield. During the pursuit, the Accord broke multiple California traffic laws while making its way on Oakland streets towards I-880.  As the Accord was on the on-ramp to I-880 from 29th Avenue, the CHP aviation unit advised that they were visually tracking the vehicle, and the patrol vehicle broke off its pursuit in the interest of public safety. On the highway, the Accord reached speeds approaching 100 MPH and weaved in and out of traffic.

The CHP aviation unit directed CHP patrol officers to the location where the Accord was parked. When CHP patrol vehicles arrived, the first CHP patrol vehicle located Witness 1 and detained her. The second CHP patrol vehicle that arrived located a black male matching the driver's description standing next to a burned-out RV parked underneath I-880, a short distance away from the Accord. The CHP aviation unit informed the marked patrol vehicles that the second female passenger, Witness 2, had walked away into an adjacent parking area, and was located behind multiple RVs making her hard to see for the responding officers. Witness 2 was taken into custody.  The driver was subsequently identified as Pearson.

Witness 2 told a CHP officer that Pearson had had a shotgun in a grey duffel bag in the vehicle, but that she was not sure where he had put the duffel bag. After being alerted that Pearson had had a firearm, a CHP Officer searched the area of the burned-out RV not far from the Accord, and where Pearson had been standing when he was apprehended.

The RV had a burned and collapsed roof and sidewalls, exposing its interior.  Piles of trash, glass, and ashes covered the floor of the RV, and it was uninhabitable. The duffel bag was clean and

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN                      2
4:25-MJ-70244-MAG

placed on top of a pile of trash, and was in an area fully accessible from outside the RV, due to the major fire damage. When the CHP officers recovered the duffel bag, it was zippered shut. However, CHP officers observed that it had a long object inside, stretching the material of the bag. The CHP officers recognized this object as the barrel of a firearm. A search of the duffel bag showed that the object was a J. Stevens Arms Company/Savage Arms Company, model 620, 12-gauge shotgun, loaded with five shells. An image of the shotgun is included below.



Pearson was arrested and charged in state court with evading a peace officer, to which he later plead guilty and was sentenced to 16 months in prison.

**A. While on release pending trial for his May 2025 crimes, Pearson was again arrested while breaking into a vehicle and likely in possession of another firearm**

At some point after being arrested on May 16, 2025, Pearson was released pending trial on his state charges. Early in the morning on July 16, 2026, an OPD patrol officer encountered Pearson when dispatched on a call for a car prowler. The officer responded to the scene and observed two males standing in the area of the reported car theft. The officer approached the individuals and told them to put

their hands up, after which they immediately fled. Officers pursued and detained both individuals, one of which was Pearson. One of the responding officers searched the area of the suspects' vehicle, which he located next to the victim's vehicle. The officer observed a black backpack outside the car on the pavement next to the passenger side door. The officer was able to see the grip and trigger of a shotgun, which was identified as a Browning 12 gauge shotgun Model 20 loaded with one round in the chamber and two rounds in the magazine tube.

**B. On March 6, 2026, Pearson was charged with being a felon in possession of a firearm**

On March 6, 2026, Pearson was charged with a violation of 18 U.S.C. § 922(g)(1) — Felon in Possession of a Firearm.  At the time he was charged with the federal offense, Pearson was in state custody.  On or about March 9, 2026, Pearson was released from state custody and brought into federal custody on the new federal charges.  Pearson made his initial appearance on Tuesday, March 10, 2026, and the government moved for pretrial detention on the basis of danger to the community and risk of non-appearance.

### CRIMINAL HISTORY AND PRIOR CONDUCT

Pearson has an extensive and serious criminal history, stretching back decades and including 18 convictions.  Pearson also has a long list of arrests that did not result in convictions.  A list of Pearson's convictions and the sentences received is included below:

| Date | Jurisdiction | Offense | Sentence |
|---|---|---|---|
| 4/24/2004 | Hayward | 10851(A) VC-TAKE VEH W/O OWN CONSENT/VEH THEFT | 32 days jail; 60 months probation |
| 9/29/2004 | Alameda | 14601.1(A) VC-DRIVE WHILE LIC SUSPEND/ETC | 8 days jail; 3 years probation |
| 12/10/2004 | Oakland | 12021(A)(1) PC-FELON/ETC POSSESS FIREARM | 120 days jail; 5 years probation |
| 4/24/2006 | Oakland | 12021(A)(1) PC-FELON/ETC POSSESS FIREARM | 1 day jail; 5 years probation |
| 11/15/2006 | Stanislaus | 496(D) PC-ATTEMPT TO COMMIT 496 PC:STOLEN PROP | 8 months prison |
| 9/15/2009 | Oakland | 11378 HS-POSSESS CONTROL SUBSTANCE FOR SALE | 2 years prison |

| 10/19/2009 | San Quentin | 11378 HS-POSSESS CONTROL SUBSTANCE FOR SALE | 2 years prison |
|---|---|---|---|
| 9/02/2010 | Hayward | 14601.1(A) VC-DRIVE WHILE LIC SUSPEND/ETC | 16 days jail; 36 months probation |
| 01/27/2011 | Oakland | 10851(A) VC-TAKE VEH W/O OWN CONSENT/VEH THEFT | 213 days jail; 5 years probation |
| 03/16/2012 | Oakland | 2800.3 VC-EVADE PEACE OFFICER:CAUSE SBI/DEATH | 6 years prison |
| 05/19/2014 | Oakland | 2800.2(A) VC-EVADE PEACE OFCR:DISREGARD SAFETY | 2 years prison |
| 10/29/2015 | Oakland | 2800.2(A) VC-EVADE PEACE OFCR:DISREGARD SAFETY | 16 months prison |
| 03/16/2016 | Oakland | 496D(A) PC-POSSESS STOLEN VEHICLE/VESSEL/ETC | 1 year jail; 5 years probation |
| 03/16/2017 | Oakland | 3455 PC-POST RELEASE COMMUNITY SUPV VIOLATION | 48 days jail |
| 11/29/2017 | Contra Costa | 2800.4 VC-EVADING PO:WRONG WAY DRIVER;  29800(A)(1) PC-FELON/ADDICT POSS/ETC FIREARM;  10851(A) VC-TAKE VEH W/O OWN CONSENT/VEH THEFT | 104 months prison |
| 08/23/2022 | Oakland | 29800(A)(1) PC-FELON/ADDICT POSS/ETC FIREARM;  10851(A) VC-TAKE VEH W/O OWN CONSENT/VEH THEFT | 1 day jail; 2 years probation |
| 01/04/2024 | Oakland | 10851(A) VC-TAKE VEH W/O OWN CONSENT/VEH THEFT | 1 day jail; 2 years probation |
| 03/09/2026 | Oakland | 2800.2(A) VC, EVADING AN OFFICER | 16 months |

Pearson's criminal history also includes many failures to abide by court-imposed supervision. His record indicates at least five separate times that Pearson was found to have violated his parole or was convicted of another offense while still on parole for a previous conviction.  Pearson also appears to have been on probation when he incurred as many as seven of his convictions.  Finally, Pearson has had numerous warrants issued for violations of post-conviction community supervision, with one conviction in 2016 for violating the terms of his community supervision.

Pearson also recently reoffended while on pretrial supervision.  As described above, after Pearson was arrested for the May 2025 evasion and firearm possession described above, he was released pending trial.  But only two months later, Pearson was arrested while attempting to break into a car with another person, and another shotgun carried in a bag was found near where he was first seen.

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN
4:25-MJ-70244-MAG

5

**ARGUMENT**

**I.    LEGAL STANDARDS**

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  Detention is appropriate where defendant is either a flight risk or a danger to the community; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). While a finding that a defendant is a danger to the community must be supported by clear and convincing evidence, 18 U.S.C. § 3142(f), a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

In determining whether pretrial detention is appropriate, the court must consider information regarding the nature and circumstances of the charged offense; the weight of the evidence; the danger posed by the defendant to any person or the community; and the history and characteristics of the defendant. 18 U.S.C. § 3142(g).

**II.    PEARSON IS A DANGER TO THE COMMUNITY AND A FLIGHT RISK**

Pearson's serious crime, his extensive criminal history, and his routine violations of court supervision establish that he is a significant danger to the community and a risk of flight, neither of which can be mitigated by any conditions of release.  He should be detained pending trial.

**A.    The nature and circumstances of the offense weigh in favor of detention**

Pearson's possession of a loaded firearm, without more, poses a danger to the community.  But Pearson did not only possess a firearm.  The offense conduct includes a laundry list of crimes.  Pearson was driving a stolen vehicle. He fled from police.  While fleeing, he drove at dangerous speeds on crowded roads weaving in and out of traffic.  Pearson was also in possession of suspected narcotics and narcotic paraphernalia.  The conduct underlying this offense displays Pearson's wanton disregard for the law.  Given that Pearson's crimes include repeated illegal firearms possession and reckless flight, this disregard for the law poses a grave risk to the safety of the community.

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN                6
4:25-MJ-70244-MAG

**B.      Pearson's extensive criminal history confirms that he is a serious danger to the community and a flight risk**

Pearson's criminal history confirms that he is both a danger to the community and a flight risk. Pearson has had 18 convictions since 2004. And his convictions are serious; they include illegal firearms possession, distributing narcotics, reckless flights, and stolen vehicles. Pearsons's most serious offense is a conviction for reckless flight resulting in serious bodily injury or death, which resulted in a 104-month sentence. And what is most concerning is that Pearson has never been deterred from committing further crimes. Indeed, since 2004, Pearson has only gone longer than two years without a criminal conviction one time, from 2017 to 2022. And that five-year reprieve was only because was serving a 104-month sentence for his conviction of flight resulting in injury or death. And even that 104-month sentence did not deter Pearson, since he engaged in the same sort of reckless flight in this case. In short, when Pearson is out of custody, he commits crimes. This proven pattern of unrelenting, dangerous criminal conduct presents a serious risk to the safety of the community.

Pearson's history also demonstrates that he is a risk of flight. He has been convicted of fleeing from peace officers on five separate occasions, including his flight in the May 2025 incident that lead to the current charges. He also fled from police in the July 2025 incident that lead to the state ordering that he be detained pending trial. These incidents show a strong propensity to flee from justice. The risk that he will flee from these proceedings is underscored in this case, where Pearson faces exposure that is significantly higher than any of his previous state convictions.

C.  **The evidence against Pearson is strong**

The risk that Pearson will flee is also enhanced by the strong evidence against him. Pearson was seen reaching into the burned-out RV where the firearm was found when officers first encountered him. Witness 2, who was in the vehicle with him, described to officers the exact type of bag and knew that it contained a shotgun. She reported that it was Pearson's. She did not know where it was, because Pearson had hid it. But CHP was able to find the bag with the shotgun in the exact location Pearson had been reaching when he was apprehended. Given these facts, Pearson's faces a strong likelihood of

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN                                                 7
4:25-MJ-70244-MAG

conviction, enhancing his incentive to flee.

D. **There are no conditions of release that will mitigate the risk that Pearson will harm the community or fail to appear for these proceedings**

There are no conditions of release that can protect the community or assure Pearson's appearance. This is because no condition can mitigate the risks Pearson poses if he does not follow the Court's orders. And Pearson's history demonstrates that he is unlikely to follow Court orders, even if it means a violation of his terms of supervision. As described above, over the years Pearson has violated parole or community supervision numerous times, several times resulting in additional custody time. Even the most restrictive conditions available to the Court—home lockdown or confinement at a halfway house—require a belief that the defendant is deterred from leaving their place of confinement by the possibility of further custody. But that possibility has failed to deter Pearson time and again. Just last year, the fact that he was on pretrial detention did not stop Pearson from committing auto burglaries while likely in possession of yet another shotgun. For this reason, any condition the Court might impose will be insufficient to protect the community or prevent Pearson's flight from these proceedings.

## CONCLUSION

For the foregoing reasons, the United States respectfully asks the Court to order Pearson detained.

DATED: March 13, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

   */s/ Evan M. Mateer*
EVAN M. MATEER
Assistant United States Attorney

MEMORANDUM IN SUPPORT OF THE UNITED STATES' MOTION TO DETAIN
4:25-MJ-70244-MAG

8